UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>   Compass Medical, P.C.,<br><br>        Debtor.<br><br>John J. Aquino, Chapter 7 Trustee of Compass Medical, P.C.,<br><br>        Plaintiff,<br><br>v.<br><br>Elizabeth M. Levine,<br><br>        Defendant. | Chapter 7<br>Case No.: 23-10886-CJP<br><br><br><br>A.P. No.: |

## COMPLAINT

Plaintiff John J. Aquino, solely in his capacity as the duly-appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of debtor Compass Medical P.C. (the "Debtor"), by way of complaint against Elizabeth M. Levine (the "Defendant"), hereby alleges as follows:

### Parties

1. The Trustee is the duly-appointed Chapter 7 trustee of the Debtor and the Estate.

2. The Debtor is a Massachusetts professional corporation and the debtor in this Chapter 7 proceeding.

3. Defendant is a resident of Sharon, Massachusetts. Defendant is an insider of the Debtor as defined by applicable state and federal law.

## Jurisdiction and Venue

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

5. Venue of this adversary proceeding in this Court is proper pursuant to 28 U.S.C. § 1409.

6. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2). This Court may hear and enter a final order in this matter consistent with Article III of the United States Constitution.

## Facts

7. On June 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition with this Court commencing this Chapter 7 case.

8. On June 5, 2023, the Office of the United States Trustee appointed the Trustee as Chapter 7 trustee of the Debtor and the Estate.

9. Prior to the Petition Date, the Debtor provided primary care, urgent care, and specialty care services to approximately 70,000 patients at six locations in Massachusetts.

10. On May 31, 2023, the Debtor abruptly ceased operations and terminated all of its employees and patient care.

11. The Debtor transferred the sum of $10,525.00 to Defendant on June 2, 2023 by direct deposit (the "Transfer").

## Count I
## Avoidance of Preference - 11 U.S.C. § 547(a)

12. The Trustee incorporates each of the foregoing Paragraphs as if fully set forth herein.

13. The Defendant was an insider of the Debtor on the date of the Transfer.

14. The Transfer was made to the Defendant as a creditor of the Debtor.

2

15. The Transfer was made for or on account of an antecedent debt owed to Defendant.

16. The Debtor was insolvent as of the time of the Transfer.

17. According to the Debtor's Schedules of Assets and Liabilities [Doc. No. 37], the Debtor's liabilities, totaling more than $14.3 million, exceeded its assets as of the Petition Date.

18. As of the Petition Date, Debtor only had $583,000 in cash, cash equivalents, and financial assets and $8,775,901.70 in total assets, which included accounts receivable of questionable collectability and equipment and other assets that were worth far less than the $2.8 million value assigned to them in the Schedules.

19. In May 2017, Debtor filed a lawsuit against Steward Medical Group, Inc. ("SMG") to recover $20 million in service fees (the "Steward Litigation"). SMG responded with counterclaims, and the parties engaged in contentious, expensive litigation for five years.

20. On or about October 11, 2022, a jury returned a verdict in favor of SMG and against Debtor in the Steward Litigation, and awarded SMG $16.4 million in damages.

21. The amount of the jury verdict in the Steward Litigation was over twenty times its cash on hand and almost double the total value of Debtor's assets given them by the Debtor as of the Petition Date. See Schedules of Assets and Liabilities [Doc. No. 36].

22. The Debtor did not include the SMG jury verdict in its Schedules. *Id.* Had it done so, the amount of its liabilities would have exceeded the Debtor's estimated value of its assets by more than $20 million.

23. Prior to the closure of the business and the bankruptcy filing, the Debtor had fallen behind in its payment of operating expenses and was unable to pay its debts as they came due. According to Debtor's Statement of Financial Affairs [Doc. No. 37], in the years prior to Debtor's bankruptcy filing, its gross revenue dropped from $141,045,031 in 2021 to

Document    Page 4 of 7

$62,663,998 in 2022. For the first five months of 2023, the Debtor's revenue dropped further, to $17,854,242.33. These declines resulted in unpaid priority and nonpriority unsecured claims over $4.5 million as of the Petition Date, not including the damages in the Steward Litigation. *See* Schedule F [Doc. No. 36].

24. Despite this, Debtor paid the Transfer to Defendant two days after Debtor fired all of its employees and terminated its business operations, and only three days before the Petition Date.

25. During the 12 months prior to the Transfer, monthly payments of compensation to Defendant were made on the 10th of the month, or the Friday before if the 10th of the month was a weekend or holiday.

26. Accordingly, had it been made in the ordinary course of the Debtor's business, the payment date for the Transfer would have been June 9, 2023.

27. Instead, the Transfer was made on June 2, 2023, so that it could be processed before the Debtor's Chapter 7 filing.

28. Thus, the Transfer was not made in the ordinary course of the Debtor's business.

29. The Transfer was made to the Defendant on or within ninety (90) days before the Petition Date.

30. The Transfer enabled Defendant to receive more than he would have received if: (a) the case were a case under Chapter 7 of the United States Bankruptcy Code; (b) the Transfer had not been made; and (c) Defendant received payment of such debt to the extent provided by the provisions of the United States Bankruptcy Code.

31. The Trustee may recover the Transfer or the fair value thereof pursuant to 11 U.S.C. § 550(a).

## Count II
### Fraudulent Transfer - 11 U.S.C. § 548

32. Plaintiff incorporates each of the foregoing Paragraphs as if fully set forth herein.

33. Upon information and belief, the Debtor received no property or anything else of value from Defendant in exchange for the Transfer.

34. Upon information and belief, the Defendant gave no property or anything else of value to the Debtor in exchange for the Transfer.

35. The Debtor received less than reasonably equivalent value in exchange for the Transfer.

36. According to the Debtor's Schedules of Assets and Liabilities [Doc. No. 36], the Debtor's liabilities, totaling more than $14.3 million, exceeded its assets as of the Petition Date.

37. As of the Petition Date, Debtor only had $583,000 in cash, cash equivalents, and financial assets and $8,775,901.70 in total assets, which included accounts receivable of questionable collectability and equipment and other assets that were worth far less than the $2.8 million value assigned to them in the Schedules.

38. In May 2017, Debtor filed a lawsuit against Steward Medical Group, Inc. ("SMG") to recover $20 million in service fees (the "Steward Litigation"), and SMG responded with counterclaims, and the parties engaged in contentious, expensive litigation for five years.

39. On or about October 11, 2022, a jury returned a verdict in favor of SMG and against Debtor in the Steward Litigation, and awarded SMG $16.4 million in damages.

40. The amount of the jury verdict in the Steward Litigation was over twenty times its cash on hand and almost double the total value of Debtor's assets given them by the Debtor

5

as of the Petition Date. Schedules of Assets and Liabilities [Doc. No. 36]. The Debtor did not include the SMG jury verdict in its Schedules. *Id.*

41. The Debtor did not include the SMG jury verdict in its Schedules. *Id.* Had it done so, the amount of its liabilities would have exceeded the Debtor's estimated value of its assets by more than $20 million.

42. Prior to the closure of the business and the bankruptcy filing, the Debtor had fallen behind in its payment of operating expenses and was unable to pay its debts as they came due. According to Debtor's Statement of Financial Affairs [Doc. No. 37], in the years prior to Debtor's bankruptcy filing, its gross revenue dropped from $141,045,031 in 2021 to $62,663,998 in 2022. For the first five months of 2023, the Debtor's revenue dropped further, to $17,854,242.33. These declines resulted in unpaid priority and nonpriority unsecured claims over $4.5 million as of the Petition Date, excluding the damages from the Steward Litigation. *See* Schedule F [Doc. No. 36].

43. Despite this, Debtor paid the Transfer to Defendant two days after Debtor fired all of its employees and terminated its business operations, and only three days before the Petition Date.

44. The Debtor was insolvent on the date of the Transfer, or became insolvent as a result of the Transfer.

45. On the date of the Transfer, the Debtor was engaged in a business for which any property remaining after the Transfer was an unreasonably small capital.

46. On the date of the Transfer, the Debtor intended to incur, or believed it would incur, debts beyond the Debtor's ability to pay as such debts matured.

47. Upon information and belief, the Debtor made the Transfer to of for the benefit of an insider and not in the ordinary course of business.

48. The Trustee may avoid the Transfer pursuant to 11 U.S.C. § 548.

49. The Trustee may recover the Transfer or the fair value thereof pursuant to 11 U.S.C. § 550(a).

## Count III
### Recovery of Property - 11 U.S.C. § 550

50. The Trustee incorporates each of the foregoing Paragraphs as if fully set forth herein.

51. The Trustee is entitled recover the Transfer or the fair value thereof from the Defendant for the benefit of the Estate.

52. The Defendant is the initial transferee of the Transfer.

53. The Trustee may recover the Transfer or the fair value thereof pursuant to 11 U.S.C. § 550(a).

WHEREFORE, the Trustee demands judgment against the Defendant as follows:

1. Pursuant to Counts I-III, enter judgment in favor of the Trustee and against the Defendant in the amount of the Transfer, plus prejudgment interest thereon; and

2. Grant the Trustee such other and further relief as is equitable and just.

Respectfully submitted,

JOHN J. AQUINO, Chapter 7 Trustee of
Compass Medical, P.C.
By his attorneys,

*/s/ James G. Atchison*
Michael J. Goldberg (BBO # 551869)
James G. Atchison (BBO # 671047)
Casner & Edwards, LLP
303 Congress Street
Boston, MA  02210
(857) 241-1355
goldberg@casneredwards.com
atchison@casneredwards.com